# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL     'O'

| | |
|---|---|
| Case No. | 2:21-cv-01810-CAS (Ex) |
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL |
| Date | June 7, 2021 |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
   Charles Linehan
   Daniel Germain
   Karissa Sauder

Attorneys Present for Defendants:
   Not Present

**Proceedings:**     MOTION OF DEAN M. HARMON JR. FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL (Dkt. 9, filed April 27, 2021)

MOTION OF QIAN ZHAO TO CONSOLIDATE RELATED ACTIONS, FOR APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF CHOICE OF COUNSEL (Dkt. 11, filed April 27, 2021)

MOTION OF PETER A. YOUNG FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL (Dkt. 20, filed April 27, 2021)

MOTION OF JOHNAVO CHRIS BRADLEY FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL (Dkt. 24, filed April 27, 2021)

MOTION OF IESADA NARIYOSHI AND JOSEPH SAMIA FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF COUNSEL (Dkt. 26, filed April 27, 2021)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

## I. INTRODUCTION

Plaintiff Shawn Lopez filed this proposed securities class action against defendants AgEagle Aerial Systems, Inc. ("AgEagle"), J. Michael Drozd, Nicole Fernandez-McGovern, Bret Chilcott, and Barrett Mooney (collectively "defendants") on February 26, 2021. See Dkt. 1 ("Compl."). The complaint alleges claims against defendants for: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5; and (2) violation of Section 20(a) of the Exchange Act. Compl. ¶¶ 44-58. Movants Dean M. Harmon, Jr., Qian Zhao, Peter A. Young, Johnavo Chris Bradley, Iesada Nariyoshi, and Joseph Samia (collectively, "movants") are plaintiff-investors in AgEagle who claim to have suffered losses caused by defendants' securities law violations as a result of alleged false statements in furtherance of a "pump & dump scheme [...]to defraud US investors" between September 3, 2019 and February 18, 2021. Id. ¶¶ 1, 32.

Before the Court are each movant's motions to consolidate this action with Cristian Jesus Merino Madrid v. AgEagle Aerial Systems, Inc. et al., 2:21-cv-01991-CAS-E (C.D. Cal.) (the "Madrid action"), filed on January 14, 2020; for appointment as lead plaintiff; and for approval of their selection of counsel as lead counsel, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B). See dkts. 9 ("Harmon Mot"), 11 ("Zhao Mot."), 21 ("Young Mot."), 24 ("Bradley Mot."), and 26 ("Nariyoshi/Samia Mot."). Movants Young and Bradley filed oppositions on May 17, 2021, see dkts. 36 ("Bradley Opp'n"), 37 ("Young Opp'n"), and replies on May 24, 2021, see dkts. 38 ("Young Reply"), 39 ("Bradley Reply").[1]

The Court held a hearing on June 7, 2021. Having considered the parties arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Given the procedural posture of this litigation, the Court recites only those facts necessary to resolve the present motions. Defendant AgEagle designs, engineers, and manufactures commercial drones and provides "drone services and solutions to the agriculture industry." Compl. ¶ 7. Plaintiff alleges that on September 3, 2019, AgEagle

---

[1] Movants Harmon, Zhao, Nariyoshi, and Samia each filed notices of non-opposition on May 17, 2021. See dkts. 33-35.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

issued a press release announcing: "AgEagle Enters the Fast-Growing Commercial Drone Package Delivery Market." Id. ¶ 17. The press release explained that major retailers and delivery companies, such as Amazon and FedEx, were "actively developing commercial drone-delivery service initiatives" and that AgEagle has "received our first purchase orders to manufacture and assemble UAVs [unmanned aerial vehicles] designed to meet the critical specifications for drones that are meant to carry goods in urban and suburban areas." Id. ¶ 18. AgEagle allegedly made a series of additional statements suggesting that had agreed with "a major unnamed ecommerce company" to manufacture commercial delivery drones in press releases and financial statements issued in mid-April 2020. Id. ¶¶ 19-20.

Plaintiff alleges that on April 29, 2020 "news broke of a video posed on the personal website and YouTube channel of Defendant Chilcott's daughter" that showed an unboxing of AgEagle's drones and "included the logos of AgEagle and Amazon side-by-side." Id. ¶ 21. Plaintiff alleges that, although the video was taken down, these reports led to "widespread speculation that AgEagle's 'major unnamed ecommerce' partner was in fact Amazon" and caused AgEagle's stock to rise from $0.95/share on April 29, 2020 to "as high as $5.15 in intraday trading on April 30, 2020." Id. ¶¶ 21-22. The complaint alleges that rumors of a cooperation agreement between AgEagle and Amazon continued to grow throughout 2020 and that "AgEagle continued to exploit the Amazon rumor for its own gain" in investor presentations, during which it continued to refuse to identify its ecommerce partner. See Id. ¶¶ 23-29.

Plaintiff alleges that on October 14, 2020 "news broke that Amazon did not have a partnership agreement with AgEagle, and in fact never did." Id. ¶ 31. Plaintiff further alleges that on February 18, 2021, "Bonitas Research published a report revealing that AgEagle "was a pump & dump scheme orchestrated by … AgEagle founder and former chairman Bret Chilcott and other [AgEagle] insiders to defraud US investors" and explaining that Bonitas had "found no evidence of any 'major e-commerce customer' or any drone technology credited to AgEagle" other than the video distributed by defendant Chilcott's daughter. Id. ¶ 32. News of the research report allegedly caused shares of AgEagle to fall by "$5.13, or 36.4%, to close at $8.96 on February 18, 2021," and thereby damaged investors. Id. 33.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

### III. LEGAL STANDARD

#### 1. Motion to Consolidate

Federal Rule of Civil Procedure 42(a) permits the Court to consolidate actions involving a common question of law or fact, and consolidation is proper when it serves the purposes of judicial economy and convenience. "The district court has broad discretion under this rule to consolidate cases pending in the same district." Investors Research Co. v. United States District Court for the Central District of California, 877 F.2d 777 (9th Cir. 1989). "In determining whether to consolidate, a court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation." Ferguson Corinthian Colleges Inc., No. 11-cv-0127-DOC, 2011 WL 1519352, at *2 (C.D. Cal. Apr. 15, 2011) (quotation marks omitted); see also Huene v. United States, 743 F.2d 703, 704 (9th Cir. 1984) ("The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause," in addition to any prejudice that may result."). "[T]ypically, consolidation is favored." Ho Keung Tse v. Apple, Inc., No. 12-cv02653-SBA, 2013 WL 451639, at *3 (N.D. Cal. Feb. 5, 2013).

#### 2. Lead Plaintiff Appointment

The PSLRA provides that "the district court shall appoint a lead plaintiff 'that the court determines to be most capable of adequately representing the interests of the class members.'" Z-Seven Fund, Inc. v. Motorcar Parts & Accessories, 231 F.3d 1215, 1217–18 (9th Cir. 2000) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(i)). "In making this determination, the court is to apply a rebuttable presumption that the most adequate plaintiff is the applicant who [1] has the largest financial interest in the relief sought and [2] otherwise meets the requirements of Rule 23 of the Federal Rules of Civil Procedure." Id. at 1217.

"If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff. If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23" for "typicality" and "adequacy." In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002). Once the Court identifies the presumptive lead plaintiff, this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

presumption can be rebutted only by "proof" that the presumptive candidate for appointment "will not fairly and adequately represent the class, or is subject to unique defenses." Z-Seven Fund, 231 F.3d at 1218 (quoting 15 U.S.C. § 78–u4(a)(3)(B)(iii)(II)). "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements" of Rule 23(a), "he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." In re Cavanaugh, 306 F.3d at 732.

## IV. DISCUSSION

### 1. Consolidation

Each of the movants seeks consolidation of this action, Case No. 21-cv-01810, with the Madrid action, Case No. 21-cv-01991, and no party opposes consolidation. "Where multiple securities class actions have been filed involving the same or substantially similar claims, the Reform Act directs that the court before which the actions are pending first consider whether consolidation is appropriate." Andrade v. Am. Apparel, Inc., No. 10-06352 MMM (PJWx), 2011 WL 13130706, at *2 (C.D. Cal. Mar. 15, 2011) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). Because this case and the Madrid action each concern the same group of misrepresentations regarding AgEagle's potential business relationship with Amazon during the same class period, September 3, 2019 through February 18, 2021, and assert claims against the same defendants on the same theories of liability, the Court finds that they "involve … common question[s] of law or fact." Fed. R. Civ. P. 42(a). Accordingly, "as is the norm in securities class actions" the Court consolidates this action with the Madrid action under FRCP 42(a). See Malriat v. QuantumScape Corp., No. 3:21-CV-00058-WHO, 2021 WL 1550454, at *2 (N.D. Cal. Apr. 20, 2021).

### 2. Lead Plaintiff Appointment

The Court must decide whether to appoint Bradley or Young as lead plaintiff.[2] In making this decision, the Court begins by presuming that the most adequate lead plaintiff is the movant "who has the largest financial interest in the relief sought *and* otherwise meets the requirements of Rule 23." In re Gemstar-TV Guide Int'l, Inc. Sec. Litig., 209 F.R.D. 447, 450 (C.D. Cal. 2002) (initiating its analysis by determining the presumptive

---

[2] As noted *supra*, each of the remaining prospective lead plaintiffs has filed a notice of non-opposition to the competing motions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

lead plaintiff on this basis) (emphasis added) (citing Z-Seven Fund, 231 F.3d at 1217-18). After determining the presumptive lead plaintiff, the Court considers any arguments to rebut that presumption. Id.

### A. Presumptive Lead Plaintiff

In this case, Bradley claims losses caused by defendant's alleged securities fraud totaling approximately $77,852, see Bradley Mot. at 2, and Young claims losses totaling $18,005.70, see Young Opp'n at 4. The movants do not challenge the accuracy of, or the method used to calculate, these amounts.

Following the procedure set forth by the PSLRA and described in In re Cavanaugh, the Court first considers whether Bradley, who has the largest claimed financial losses, "provides information that satisfies" the typicality and adequacy requirements of Rule 23 sufficient to be named the presumptive lead plaintiff. In re Cavanaugh, 306 F.3d at 730. At this stage, "a wide-ranging analysis" of these requirements "is not appropriate" and "should be left for consideration on a motion for class certification." Puente v. Chinacast Educ. Corp., No. 12-CV-04621-JFW (PLAx), 2012 WL 3731822, at *3 (C.D. Cal. Aug. 22, 2012) (internal marks omitted); see also In re Cendant Corp. Litig., 264 F.3d 201, 263 (3d Cir. 2001) ("The initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy."). "[N]othing more than a preliminary showing is required" to satisfy this inquiry. Wenderhold v. Cylink Corp., 188 F.R.D. 577, 587 (N.D. Cal. 1999).

Bradley contends that his claims are typical of the proposed class because he claims to have suffered the same injuries as the class (i.e. "losses on his investments in AgEagle securities that he incurred as a result of Defendants' misrepresentations and omissions) as a result of the same course of conduct by the defendants in making false statements regarding AgEagle's business prospects. Bradley Mot. at 7. Bradley also bases his claims on the same legal theories as the class (i.e. that defendants' materially false statements violated the securities laws). See generally Id. The Court finds that these submissions are sufficient to establish that Bradley's claims are typical since "they are reasonably co-extensive with those of absent class members." B.K. by next friend Tinsley v. Snyder, 922 F.3d 957, 969–70 (9th Cir. 2019) (holding that a "named plaintiff's representative claims are 'typical' if they" meet this standard, and "need not be substantially identical") (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

Bradley next contends that he will adequately and fairly protect the interests of all class members. "The test for adequacy asks whether the lead plaintiff and its counsel 'have any conflicts of interest with other class members' and whether the lead plaintiff and his counsel will 'prosecute the action vigorously on behalf of the class.'" Deinnocentis v. Dropbox, Inc., No. 19-CV-06348-BLF, 2020 WL 264408, at *4 (N.D. Cal. Jan. 16, 2020) (quoting Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003)). Bradley contends that he meets these requirements because his interests are aligned with those of the class and "there is no antagonism or potential conflict between Mr. Bradley's interests and those of other members of the class," because he fully understands the Lead Plaintiff's responsibilities and is willing and able to perform those obligations, and because he has retained qualified and experienced securities class action counsel. See Bradley Mot. at 8-10. Specifically, Bradley states that he has retained the Kessler Topaz firm to serve as lead counsel for the class and explains that the firm significant experience successfully prosecuting and trying securities fraud class action on behalf of investors, including in matters brought under the PSLRA. Bradley Mot. at 9-10; see also dkt. 24-7 ("Kessler Topaz Meltzer & Check, LLP Firm Profile"). In addition, Bradley states that he has retained experienced complex litigation counsel at the Rosman & Germain firm to act as "liaison counsel." Bradley Mot. at 10; see also dkt. 24-8 ("Rosman & Germain LLP Firm Biography"). The Court finds that these submissions supply sufficient preliminary information to make a *prima facie* showing that Bradley is an adequate representative at this stage of the litigation. See Knox v. Yingli Green Energy Holding Co. Ltd., 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("Rule 23(a)'s adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation.") (internal brackets omitted) (citing Staton, 327 F.3d at 957).

Based on the foregoing, the Court concludes that Bradley is the "presumptively most adequate plaintiff." In re Cavanaugh, 306 F.3d at 730.

### B. Arguments Rebutting The Presumption

The Court next considers whether any movant has come forward with "proof" sufficient to rebut that presumption and displace Bradley as lead plaintiff. See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., No. 16-CV-02672 CRB (JSC), 2016 WL 5930844, at *5 (N.D. Cal. Oct. 11, 2016) (explaining that this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

standard requires an opposing party to come forward with evidence, not just argument, demonstrating how appointing the presumed lead plaintiff "will affect the litigation" to the disadvantage of the class) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

Only Young advances an argument challenging Bradley's status as the presumptive lead plaintiff. Specifically, Young contends that Bradley cannot adequately represent the class because he is a "day-trader" and is therefore subject unique defenses that "might become the focus of the litigation and distract from more central class-wide issues." Young Opp'n at 5. Young contends that Bradley engaged in day trading by buying and selling tens of thousands of AgEagle shares on February 1 and 2, 2021, "over many transactions at different prices." Id. As such, Young argues that Bradley is subject to the unique defenses that he would have purchased the shares at issue "regardless of the misstatement/omission" at issue, because day traders "typically focus on technical price movements rather than price." Id.

In reply, Bradley disputes Young's contention that he is a day trader. Bradley argues that his transaction history is not consistent with that of a day trader who could be subject to unique defenses because he "purchased AgEagle securities on just three of the 369 trading days during the class period" and made all of his purchases and sales through block orders submitted to a broker, and "had no control over how his block trades would be filled [by the Broker] and was not trading in and out of positions in quick succession to take advantage of technical price movements. Bradley Reply at 3-4. In addition, Bradley argues that he is able to adequately represent the class because he has "held all 9,795 shares he purchased on February 5, 2021, through the end of the Class period on February 18, 2021," and is still holding all 9,795 of those shares. Id. at 4. As support, Bradley puts forward a declaration attesting that he sold his initial positions in AgEagle, purchased on February 1, 2021, via "four sale orders […] due to [his] concerns about the size of these positions relative to [his] total portfolio" and "subsequently reconsidered and purchased AgEagle stock on February 5, 2021, with the intention of holding these shares long-term."[3] See dkt.

---

[3] At oral argument, counsel for Young challenged Bradley's sworn testimony, arguing that Bradley's trading history demonstrates that he made purchase and sale orders within minutes of each other on February 1 and 2, 2021. The source of the information Young's counsel relies on is unclear to the Court, given that no evidence in the record reflects the time at which Bradley placed trades on those dates. See Dkts. 24-4, 39-2. In any event, none of Bradley's short-term trades appear to have occurred after AgEagle's alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

39-3 ("Bradley Supp. Decl.") ¶¶ 5-6; see also dkt. 39-2 (listing each of Bradley's block purchase and sale orders). In addition, Bradley attests that he "reviewed articles and other publicly available information" regarding AgEagle prior to investing in the company and, based on that information, "believed AgEagle was a good long-term investment." Id. ¶ 3.

The Court finds Young's argument that Bradley is ineligible for appointment as lead plaintiff due to day trading activity unavailing. Although some courts have "found the presumption of adequacy rebutted where there is evidence that the lead plaintiff engaged in high volume day-trading," numerous other courts have concluded that "a plaintiff's status as a purported day trader is not enough in and of itself to rebut the presumption of adequacy […] [a]bsent evidence that the [lead plaintiff] did not rely on the market price of the shares." Schueneman v. Arena Pharms., Inc., No. 10CV1959 BTM BLM, 2011 WL 3475380, at *7 (S.D. Cal. Aug. 8, 2011) (collecting cases); see also In re Lyft Sec. Litig., No. 19-CV-02690-HSG, 2020 WL 1043628, at *6 (N.D. Cal. Mar. 4, 2020) ("While the Court recognizes that [plaintiff's] trading activity could be read to suggest day trading, courts have based the denial of lead plaintiff status in such situations on the difficulty of showing reliance"); In re Zynga Inc. Sec. Litig., No. C 12-04007 JSW, 2013 WL 257161, at *2 (N.D. Cal. Jan. 23, 2013) ("whether [plaintiff] is a day trader is inconsequential to his request to be appointed lead plaintiff."). Young's challenge to Bradley's lead plaintiff status fails under either approach.

Based on the evidence before the Court, the Court is not persuaded that Young has presented "proof" demonstrating Bradley can fairly be considered a "day trader." Although Bradley did make a large number of transactions between February 1 and 5, 2021, the number of those transactions appears to be due to Bradley's broker executing a handful of block purchase and sale orders through a smaller purchase and sale transactions, without being directed by Bradley to do so. See Schueneman, 2011 WL 3475380, at *7 (S.D. Cal. Aug. 8, 2011) (declining to disqualify potential lead plaintiff due to alleged day trading where the plaintiff "denie[d] that he was a day-trader [and] state[d] that he relied on the integrity of [defendant's] stock price" and it appeared that "a large number of total

---

misrepresentations were fully disclosed on February 18, 2021, and the majority of Bradley's claimed damage is attributable to the 9,795 shares he held on that date. See infra, note 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

transactions" were attributable to plaintiff's "broker executing a single purchase order through a number of separate purchase transactions throughout the day.").

As such, and because the sum total of Bradley's twelve AgEagle trades occurred over only a five-day period, the Court finds Bradley's trading history dissimilar to the type of sustained, "high-volume" trading that has been found disqualifying, including by the cases upon which Young relies. See Young Opp'n at 5-6. For example, the facts at issue here are not like those at issue in Applestein v. Medivation Inc., where the court found that the presumptive lead plaintiff could be "susceptibl[e] to the defense that he was trading in response to information other than the alleged misstatements and omissions" based on evidence indicating that he "engaged in 407 trades of [defendant's] stock over a 644 day period within the class period." No. C 10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010); see also, e.g. Eichenholtz v. Verifone Holdings, Inc., No. C07-06140MHP, 2008 WL 3925289, at *10 (N.D. Cal. Aug. 22, 2008) (disqualifying potential lead plaintiff who made over 5,000 trades spanning a 9-month period); Tsirekidze v. Syntax-Brillian Corp., No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (disqualifying potential lead plaintiff based on evidence of "frantic [..] high-volume day-trad[ing]" including 80 separate transactions in a single day). Moreover, unlike in each of those cases, here there is evidence establishing Bradley's reliance on publicly available information regarding AgEagle in making his decision to purchase AgEagle's securities.[4] Cf. OFI Risk Arbitrages v. Cooper Tire & Rubber Co., 63 F. Supp. 3d 394, 410 (D. Del.

---

[4] In his reply brief, Young argues for the first time Bradley is not an adequate lead plaintiff because he cannot demonstrate loss causation as to shares sold on February 1 and 2, 2021. See Young Reply at 2. Although it is possible that Bradley could be subject a defense on the basis of negative loss causation because he sold shares prior to the end of the class period, that alone does not render him "atypical or inadequate to serve as lead plaintiff" because "there are likely many class members who sold shares prior to any partial disclosure or between partial disclosures who are similarly susceptible to a negative loss causation defense." In re Lyft Sec. Litig., No. 19-CV-02690-HSG, 2020 WL 1043628, at *6 (N.D. Cal. Mar. 4, 2020) (citing In re Lendingclub Sec. Litig., 282 F. Supp. 3d 1171, 1181 (N.D. Cal. 2017) (certifying class and finding typicality despite lead plaintiff's susceptibility to negative loss causation defense). Regardless, the majority of losses Bradley now asserts—approximately $44,000—are directly traceable to the 9,795 shares purchased on February 5, 2021 that Bradley continues to hold.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

2014) (""Absent actual evidence that plaintiff did not rely on market price, the characterization of the presumptive lead plaintiff as a "day trader" does not prove that the presumptive lead plaintiff "is subject to a unique defense to rebut the presumption.") (collecting cases).

In ruling on a motion for class certification, another court in this district resolved questions about a similar trading pattern in favor of the proposed lead plaintiffs. In that case, In re Snap Inc. Securities Litigation, 334 F.R.D. 209 (C.D. Cal. 2019), Snap argued that three prospective lead plaintiffs were atypical of the proposed class because they were "day traders relying on price volatility to purchase Snap's stock." Id. at 227. The court rejected that argument, noting that "[t]he Ninth Circuit has emphasized that generally "the defense of non-reliance is not a basis for denial of class certification" except "in extreme circumstances where the lead plaintiff's atypicality would substantially influence the course of the litigation." Id. (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)). The Court explained that the three potential lead plaintiffs had each disclaimed any intention to act as day traders and engaged in only "relatively limited […] frequent trading" before buying and holding shares for the long term. Id. For example, one plaintiff "bought and sold 10,000 shares of Snap on the IPO date [a 'swing-trade'], and then bought another 10,000 shares the next day" to hold for the long-term, and a second initially sold "quickly for a profit" but later "after more research" decided to "go long in this stock and keep it [and] purchased 5,000 shares." Id. The court found that those transactions did not disqualify the proposed lead plaintiffs, explaining that "[g]iven the Supreme Court's guidance that 'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity,'' short-term trading […] does not necessarily create the potential for unique defenses that would preoccupy class counsel." Id. (quoting Basic Inc. v. Levinson, 485 U.S. 224, 246–47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)).

The same logic applies here. In this case, the evidence demonstrates that Bradley engaged in very limited, albeit high-volume, short-term trading on February 1 and 2, 2021, during which time he purchased a significant interest in AgEagle in reliance on his research into "articles and other publicly available information online regarding the company" before quickly deciding to sell "due to [his] concerns about the size of these positions relative to [his] total portfolio." Bradley Supp. Decl. ¶¶ 3, 5. Subsequently, on February 5, 2021, Bradley purchased a smaller number of AgEagle shares "with the intention of holding these shares long-term" and in fact held those shares through and beyond the proposed class period. Id. ¶ 5. Consistent with Snap's reasoning, the Court finds that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-cv-01810-CAS (Ex) | Date | June 7, 2021 |
|---|---|---|---|
| Title | SHAWN LOPEZ V. AGEAGLE AERIAL SYSTEMS, INC. ET AL | | |

mere fact that Bradley engaged in that type of limited short-term trading activity over a five day period does not provide "proof" that Bradley will necessarily be subject to unique defenses that would preoccupy class-counsel, especially given that there is evidence demonstrating that Bradley did rely on market information in his decision to purchase and hold shares. See In re: Volkswagen, 2016 WL 5930844, at *5; In re Snap Inc., 334 F.R.D. at 228-29.

Having found that Bradley is the presumptive lead plaintiff, and having found that no opposing party presents "proof" sufficient to rebut that presumption, the Court concludes that Bradley shall be appointed lead plaintiff. In re Cavanaugh, 306 F.3d at 732.

## V. CONCLUSION

In accordance with the foregoing, the Court orders as follows:

1. The Court **GRANTS** the unopposed motions to consolidate this action with the Madrid action, Case No. 21-cv-01991, for all purposes.

2. The Court **GRANTS** Bradley's motions for appointment as lead plaintiff and to appoint lead counsel, and **DENIES** Young's related motions.

IT IS SO ORDERED.

|  | 00 : 14 |
|---|---|
| Initials of Preparer | CMJ |